[Nos. 36039-0-II; 36095-1-II;    Division Two.    May 12, 2009.]
36032-2-II.

THE STATE OF WASHINGTON, *Respondent*, v. LIONEL GEORGE ET AL., *Appellants*.

*Sheri L. Arnold*; *Reed M.B. Speir*; and *Eric J. Nielsen* and *Dana M. Lind* (of *Nielsen Broman & Koch, PLLC*), for appellants.

*Gerald A. Horne, Prosecuting Attorney*, and *Karen A. Watson, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Lionel George appeals his convictions of first degree robbery, first degree unlawful possession of a firearm, intimidating a public servant, third degree assault, and attempting to elude a pursuing police vehicle. He maintains that the trial court erred (1) in denying his motion for mistrial, (2) in denying his motion to sever his trial from Brian Wahsise's, and (3) by failing to include a lesser offense instruction of reckless driving. We find no merit to these arguments.

¶2 Codefendant Brian Wahsise appeals his convictions of first degree robbery and first degree unlawful possession of a firearm, asserting in part that the State failed to prove that he constructively possessed the firearm. Again, we find no merit to this issue.

¶3 Both George and Wahsise contend that the trial court erred in admitting a police officer's lay opinion testimony identifying them as the robbers in the surveillance video. We agree. But as to George, the error is harmless because the evidence of his participation in the robbery is overwhelming; as to Wahsise, we cannot find the error harmless; thus, we reverse and remand for a new trial for him.

## FACTS

¶4 On March 8, 2006, Karen Phillips and Christine Huynh were working at the Days Inn in Fife, Washington. Between 4:00 PM and 5:00 PM, from the back office, Phillips heard someone say, "[L]ay down. Shut up. Lay down." Report of Proceedings (RP) at 122-23. Shortly thereafter, Huynh, who had been at the front desk, came into the office and told Phillips that she had just been robbed.

¶5 A few minutes earlier, Huynh saw a "red Ford Bronco kind of . . . thing" pull up to the hotel entrance and three Hispanic or Native American men enter the lobby. RP at 141, 161. A heavyset man wearing a leather jacket and beanie hat pointed a gun at Huynh, who was behind the front desk. The man told Huynh not to look at him and to put all the money into a bag. After the man grabbed the

money—$476—he directed Huynh to get on the floor and not to look up. Meanwhile, the two other men stole a flat screen television from the hotel lobby. Huynh later identified the man with the gun as George.

¶6 After all three men left the building, Huynh saw the vehicle head toward the freeway and called 911. Officer Thomas Gow and Detective Jeff Rackley responded to the call in a marked patrol vehicle and an unmarked Ford Explorer. They located and attempted to stop a dark red van with an obscured license plate traveling westbound in the eastbound lane. Gow's vehicle had its lights and siren on, and Rackley's vehicle had its lights on. The van finally stopped in the middle of the block, and the officers ordered the occupants out of the van at gunpoint. Nobody exited, and the van started moving again. Eventually it came to a stop and, for the second time, the officers ordered the occupants out of the car. George got out of the driver's seat, looked at Rackley, and fled on foot. Wahsise and Robert Maass exited from the sliding passenger door and eventually obeyed the officers' commands to get on the ground.

¶7 Including the driver, there were nine people in the van. A number of them were Native American. Rackley testified that many of the van occupants were too intoxicated to get out of the van or to walk around. The officers took all of the van occupants into custody.

¶8 The officers found a large, flat panel television; knitted gloves and caps; and a roll of dimes in the van. They also observed a gun sticking out of the pouch on the back of the passenger seat. Rackley testified that the driver, the front passenger, and anyone in the back passenger area could have easily reached into the passenger seat pouch to grab the gun. No fingerprints were recovered from the television, van, or gun, but the television serial numbers confirmed that it belonged to the Days Inn. The officers never recovered the stolen money.

¶9 Officer Worswick apprehended George shortly after George fled the van. Huynh arrived with Rackley at the location where Worswick arrested George. She identified

George as the person who had pointed the gun at her and taken the money. And Rackley identified George as the person who got out of the van from the driver's door and fled.

## PROCEDURE

¶10 The State charged George with first degree robbery, first degree unlawful possession of a firearm, intimidating a public servant, third degree assault, and attempting to elude a pursuing police vehicle, with firearm enhancements. The State charged Wahsise with first degree unlawful possession of a firearm and first degree robbery with a firearm enhancement. Because the State charged George and Wahsise as codefendants in the robbery, the court joined their cases for trial.

### A. Motions in Limine

¶11 Before trial, the court granted George's motion under the confrontation clause to exclude any reference to evidence by a nontestifying codefendant. Wahsise joined in the motion. Codefendant Maass did not testify at trial.

¶12 George also moved to admit letters that he alleged Wahsise wrote, arguing that they were admissible as against a party opponent under ER 804(b)(3), against Wahsise's interest under ER 801(d)(2), or for impeachment under ER 607 if Wahsise testified. The letters exculpate George, but they are written in three different handwritings and contain inaccurate information. The court denied their admission under the party opponent hearsay exception but ruled that it would reconsider their admissibility if George produced additional evidence of their trustworthiness. The court denied George's request to put Wahsise on the stand outside the presence of the jury to determine whether the signatures on the statements were his because Wahsise had exercised his right to remain silent.

### B. Motion for Mistrial

¶13 Despite the court's evidentiary rulings, Rackley testified during trial that Maass told him that Maass was

George's son. The court sustained counsel's hearsay objection. Later, Rackley testified that George's son told him that Wahsise was in the Days Inn. George and Wahsise objected, and the court sustained the objection and instructed the jury to disregard Rackley's statement. George then moved for a mistrial, arguing that the statement "places them in the scene of the crime" and violates his confrontation right. RP at 301-02. The court denied the motion, finding that Rackley's statement did not implicate or prejudice George. The court denied George's renewed motion for mistrial after the State rested.

## C. Identification Testimony

¶14 A poor quality surveillance tape recorded the Days Inn robbery. The jury viewed the surveillance video and 67 still frame images from the video. The trial court also admitted into evidence a video and three photographs from the van arrest scene and booking photographs of Wahsise (listing height at 5'8" and weight at 180 pounds), George (listing height at 5'11" and weight at 280 pounds), and Maass (listing height at 6'1" and weight at 170 pounds).

¶15 At trial, Rackley discussed his encounters with George and Wahsise on the day of the crime. Rackley saw George at the van and at the hospital. He also identified Wahsise as one of the first two men who got out of the van's passenger sliding door. He watched Wahsise after ordering him to get on the ground and when he met with him in an interview room at the police station. Rackley compared the characteristics of George and Wahsise to the characteristics of the other van passengers and noted their heights and weights.

¶16 Rackley testified that he had viewed the surveillance video "hundreds of times" before trial and identified George as the person standing at the Days Inn counter and Wahsise as one of the two men stealing the television. RP at 248. Although Rackley could not make out facial features in the surveillance video, he identified Wahsise, George, and Maass in the surveillance video "by their build, the way

they carry themselves, the way they move, what they were wearing, and then talking to them later . . . ." RP at 289. He recognized George "because of his physical stature." RP at 263. Rackley stated that George and Wahsise looked very similar at trial to the way they looked on the day of the crime.

¶17 George objected to Rackley's identification, asserting that the identity of the individuals in the video was the ultimate issue for the jury to decide; the court overruled the objection. The trial court heard argument outside the jury's presence and found that the jury could decide whether Rackley's testimony was credible and what weight, if any, to give it.

### D. Motion To Sever

¶18 At the close of evidence, George moved to sever his trial from Wahsise's trial under CrR 4.4(a) and (c) so that Wahsise could testify in George's defense without incriminating himself. George asserted that he was under the impression that Wahsise would testify in George's favor and, because Wahsise did not testify, George could not prepare an adequate defense. The trial court denied George's motion to sever, apparently because no reliable evidence linked the letters to Wahsise and George provided no other evidence that Wahsise would exonerate George if he testified.

### E. Jury Instructions and Verdict

¶19 The court denied George's request for an instruction on reckless driving as a lesser included offense of attempting to elude a police vehicle. The jury found Wahsise and George guilty on all counts.[1]

---

[1] The court dismissed George's third degree assault and weapon enhancement charge.

## ANALYSIS

### DETECTIVE RACKLEY'S IDENTIFICATION TESTIMONY

¶20 George and Wahsise contend that the trial court abused its discretion by allowing Detective Rackley to give lay opinion testimony about the identity of the men in the Days Inn surveillance video, arguing that Rackley was in no better position to identify the men than the jury. The State asserts that Rackley's testimony was helpful to the jury because he was more familiar with the defendants than the jury and was better able to evaluate the poor quality of the surveillance photos.

¶21 We review a court's ruling admitting evidence for abuse of discretion. *State v. Magers*, 164 Wn.2d 174, 181, 189 P.3d 126 (2008) (citing *State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995)). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Magers*, 164 Wn.2d at 181 (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

¶22 A witness must testify based on personal knowledge, and a lay witness may give opinion testimony if it is (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the testimony or the fact in issue. ER 602, 701; *see State v. Hardy*, 76 Wn. App. 188, 190, 884 P.2d 8 (1994), *aff'd sub nom. State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996). A witness may not offer opinion testimony by a direct statement or by inference regarding the defendant's guilt,[2] but testimony is not objectionable simply because it embraces an ultimate issue the trier of fact must decide. *See State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001); ER 704.

---

[2] Opinion on the guilt of the defendant may be reversible error because it violates the defendant's "constitutional right to a jury trial, which includes the independent determination of the facts by the jury." *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

¶23 A lay witness may give opinion testimony as to the identity of a person in a surveillance photograph as long as "there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *Hardy*, 76 Wn. App. at 190 (citations omitted). Opinion testimony identifying individuals in a surveillance photo runs "the risk of invading the province of the jury and unfairly prejudicing [the defendant]." *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993)[3] (finding that officer's identification testimony was not helpful to the jury because the officer had never seen the defendant in person). But opinion testimony may be appropriate when the witness has had sufficient contacts with the person or when the person's appearance before the jury differs from his or her appearance in the photograph. *See LaPierre*, 998 F.2d at 1465.

¶24 In the two consolidated cases at issue in *Hardy*, officers testified to the identities of the defendants shown in videos of drug transactions. *Hardy*, 76 Wn. App. at 190-92. In one case, the officer testified he had known the defendant for several years. *Hardy*, 76 Wn. App. at 191. In the other case, the officer testified that he had known the defendant for six or seven years. *Hardy*, 76 Wn. App. at 192. The trial court found that the officers were more likely to correctly identify the defendants than were the juries. *Hardy*, 76 Wn. App. at 192. In affirming, *Hardy* relied on cases where the identification testimony came from roommates, *see United States v. Saniti*, 604 F.2d 603, 604-05 (9th Cir. 1979); a probation officer, *see United States v. Beck*, 418 F.3d 1008, 1014-15 (9th Cir. 2005); and a former girl friend, *see United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990). *Hardy*, 76 Wn. App. at 190-91. *But see United States v. Jackson*, 688 F.2d 1121, 1125 (7th Cir. 1982) (one social contact before identification testimony sufficient to help the jury understand a fact at issue). We hold that the trial court

---

[3] Federal Rule of Evidence 701 and Washington's ER 701 are the same; thus, federal cases are instructive. *Hardy*, 76 Wn. App. at 190; ER 701; Fed. R. Evid. 701.

abused its discretion in allowing Rackley to identify George and Wahsise in the video.

¶25 Here, Rackley observed George as he exited the van and ran away, and at the hospital that evening. Rackley observed Wahsise when Wahsise exited the van and was handcuffed, and while Wahsise was at the police station in an interview room. Rackley based his surveillance video identifications on each defendant's build, the way they carried themselves, the way they moved, what they were wearing,[4] how they compared to each other, and how they compared to the rest of the people in the van, and from speaking with them on the day of the crime. These contacts fall far short of the extensive contacts in *Hardy* and do not support a finding that the officer knew enough about George and Wahsise to express an opinion that they were the robbers shown on the very poor quality video.[5] We hold that the trial court erred in allowing Rackley to express his opinion that George and Wahsise were the robbers shown on the video.

¶26 But the error as to George is harmless. When evidence is improperly admitted, the trial court's error is harmless if it is minor in reference to the overall, over-whelming evidence as a whole. *State v. Yates*, 161 Wn.2d 714, 764, 168 P.3d 359 (2007) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)), *cert. denied*, 128 S. Ct. 2964 (2008). Huynh identified George as the gunman in the robbery. George was driving the red van with the stolen television set. He initially failed to stop for the police and then, after the first stop, drove off again. He also fled on

---

[4] But some of the clothing and hats changed between the time of the robbery and the arrest. The men who committed the robbery wore (1) a dark colored hat and two-toned jacket, (2) a white hooded jacket with a dark shirt underneath, and (3) a light colored jacket and white baseball cap. It is difficult to tell whether George, Wahsise, and Maass wore the same clothes when they exited the van. The only thing that is clear is that Wahsise and Maass had on dark clothing, one of them wore a white hat, and none of the three suspects had on a white coat. Rackley testified that he found a white hat and other clothing in the back of the van.

[5] We have reviewed the video, and we agree with Rackley that it is impossible to discern any facial features of either defendant in the video.

foot after exiting the van. Finally, Huynh described the gunman as a heavyset man; according to the booking information, George was 5'11" and weighed 280 pounds. We are satisfied that Rackley's improper testimony did not affect the jury's verdict.

¶27 We are not so satisfied as to Wahsise. Huynh could not identify either of the men who took the television set. And no physical evidence linked Wahsise to the robbery. The State argues that Wahsise and Maass were the first to exit the passenger side of the van and the closest to the stolen television in the van, thus suggesting that Wahsise must have been one of the men who had removed the television. Moreover, according to the State, Wahsise fit the general physical description of one of the men who took the television; Huynh described these men as a tall, slim man and a shorter man. Maass is 6'1" and weighs 170 pounds. Wahsise is 5'8" and weighs 180 pounds. Finally, the other van occupants can be eliminated, according to the State, because at least one was a woman and the other men were so intoxicated they had difficulty exiting the van and walking. We conclude that this evidence is not sufficient for us to find Rackley's testimony harmless error as to Wahsise but it is sufficient to support a conviction for robbery without the erroneous testimony if a jury so finds on remand.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BRIDGEWATER, J., concurs.

¶29 PENOYAR, A.C.J. (dissenting in part) — I concur in the majority's decision except I would not reverse Brian Wahsise's robbery conviction because I disagree with the majority's conclusion that Detective Jeff Rackley did not have suffcient contact with Wahsise to be qualified to offer

an opinion that Wahsise was one of the figures captured on the surveillance videotape. Though Rackley had less contact with Wahsise than the officers had with the respective defendants in the cases the majority cited, he nevertheless had the opportunity to observe Wahsise during the stop and in a police station interview room. Thus Rackley had independent familiarity with Wahsise's appearance and movement that the jury did not have. To my mind, this was sufficient to allow him to state his opinion. In my view, the trial court correctly ruled that the opinion was admissible and any questions as to weight were properly entrusted to the jury.

Review denied at 166 Wn.2d 1037 (2009).