IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33169-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMON MORFIN JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Ramon Morfin appeals from his conviction at a bench trial on two counts of first degree assault, primarily arguing that the trial judge erred in admitting two officers' identification of him as the shooter from a poor quality video recording of the incident. Believing the judge properly admitted that evidence, we affirm.

FACTS

The shooting occurred at a Franklin County Motel 6 late in the evening of August 29, 2011. A man fired multiple shots at Paula and Debbie Villarreal while they were seated in a car outside the hotel. The hotel's video surveillance system captured the shooting. Both women survived; Paula Villarreal had to have a bullet surgically removed from her jaw.

Detective Kirk Nebeker was one of the detectives investigating the shooting. He reviewed the surveillance video and interviewed a number of individuals in rooms of the motel, including Ramon Morfin. The detective also eventually interviewed Manual Ramirez Salazar. The detective indicated to Mr. Ramirez Salazar that the video surveillance was poor quality and did not identify the shooter. Ramirez Salazar told Nebeker that Mr. Morfin was the shooter. Sergeant Brad Gregory also participated in the investigation at the motel and saw Mr. Morfin. He also viewed the surveillance video.

The prosecutor filed two counts of first degree assault while armed with a firearm. The information also alleged the aggravating factors that the crimes were committed to advance the defendant's gang and to advance his own standing within that organization. Mr. Morfin waived his right to a jury and proceeded to a bench trial.

Detective Nebeker's testimony laid the foundation for admitting the surveillance video. Prior to playing the video, the detective described the contents of the video, including his identification of the shooter: "You can see who I identify as Mr. Morfin lean over the car, and you can see the fire from the muzzle as shots go out." Defense counsel did not object to this testimony. The video was then played for the bench.

The detective had periodic prior contacts with Mr. Morfin dating back 11 years before the shooting. When seeing him at the hotel, the detective immediately recognized his face. However, he could not recognize Mr. Morfin's face in the video because of its poor quality. Instead, he recognized Mr. Morfin based on the clothing he was wearing that

2

night. He similarly thought the shooter had the same body build as Mr. Morfin had.

After discussing the detective's belief that Mr. Morfin was the shooter, the prosecutor asked Detective Nebeker about his interview of Mr. Ramirez Salazar. In both direct and redirect examination, the prosecutor solicited answers that Ramirez Salazar had confirmed the detective's belief that Morfin was the shooter. Defense counsel did not object to either of these statements. Instead, counsel cross-examined the detective concerning perceived inconsistencies between his trial testimony about the quality of the videotape and what he had told Ramirez Salazar about the tape's quality. The detective explained that he used a ruse on Ramirez Salazar to obtain information.

Sergeant Brad Gregory was the only other witness who identified Mr. Morfin as the shooter. Like Detective Nebeker, Gregory could not identify faces on the videotape and based his identification solely on the shooter's clothing and "body style." Unlike Nebeker, Sergeant Gregory had no prior experience with Mr. Morfin before that night.

The trial judge found Mr. Morfin guilty of both charges and the accompanying firearm enhancements, but rejected the two gang-related aggravating factors. Commenting on the evidence, the court indicated that the videotape itself was insufficient to identify the shooter.[1] The court confirmed that it relied on the identification made by the two officers. The written findings of fact prepared by the prosecutor's office also credit the two officers'

---

[1] "The video itself would not allow an individual who hasn't observed these folks at the scene to make much of it." Report of Proceedings at 165.

3

identification from the video and describe the clothing worn by Mr. Morfin and seen on the video. The findings also note that Mr. Ramirez Salazar confirmed the identification, although the court's oral remarks did not mention Mr. Ramirez Salazar.

Mr. Morfin timely appealed to this court.

### ANALYSIS

This appeal challenges the use of the officers' identification testimony and the reference to Mr. Ramirez Salazar's "confirmation" that Mr. Morfin was the shooter.[2] As there was no objection at trial to any of this testimony, Mr. Morfin frames the issues on appeal as instances of ineffective assistance of counsel. We address the two arguments as sub-issues of that challenge.

Well settled standards govern our review. Typically, the failure to raise an evidentiary challenge at trial waives any challenge to the evidence. *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985); RAP 2.5(a). In the case of assertions of ineffective assistance of counsel, appellate courts undertake a two-prong analysis. The Sixth Amendment to the United States Constitution guarantee of the right to counsel requires that an appointed attorney perform to the standards of the profession. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by the attorney's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899

---

[2] Mr. Morfin also filed a pro se statement of additional grounds. None of the four issues raised in that document have merit and we will not further discuss them.

P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Id.* at 690-692.

Mr. Morfin first contends that his counsel should have objected to the testimony from Nebeker and Gregory identifying him as the shooter in the video based on the clothing he had been wearing. He contends that counsel should have raised a foundational challenge to the testimony in accord with the decision in *State v. George*, 150 Wn. App. 110, 119, 206 P.3d 697 (2009). We think the more apropos decision is *State v. Hardy*, 76 Wn. App. 188, 884 P.2d 8 (1994).

In *Hardy*, the defendants objected at jury trial to testimony from an officer who identified the defendant from a grainy videotape as the person who purchased drugs from a police informant. *Id.* at 189-190. They contended that the testimony invaded the province of the jury and was improper opinion testimony. *Id.* at 190. Division One noted the lay opinion testimony was proper under ER 701 when it was based on the perception of the witness and was helpful to a clear understanding of the issue. *Id.* After review of cases interpreting the instructive federal version of the rule, the court stated:

5

> A lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.

*Id.*

In each case, the officers involved had prior contacts with the defendants. *Id.* at 191-192. Because the officers knew the defendants, they were "in a better position to identify [the defendant] in the somewhat grainy videotape than was the jury." *Id.* at 191. The court also rejected the claim that the testimony invaded the province of the jury since the jury was free to disbelieve the officers. *Id.*

A somewhat different factual pattern was presented in *George*, a robbery prosecution. There a divided Division Two panel concluded that an officer who had talked to the defendants the night of the robbery and extensively reviewed the surveillance video invaded the province of the jury when he identified the robbers from the video. 150 Wn. App. at 118. The *George* majority distinguished *Hardy* on the basis of the "extensive" contacts the *Hardy* officers had with the defendants during the years. *Id.* at 119. Although the *George* officer had based his identification in part on the clothing worn that night, it was clear that there had been some change in clothing between the robbery and the police contact. *Id.* at n.4. The dissenting judge concluded the officer had enough contact with the defendant that night to comment about the video. *Id.* at 120-121 (Penoyar, A.C.J., dissenting in part).

6

We need not opine whether *George* was properly decided since it, too, is distinguishable from this case. Here, Detective Nebeker had known Mr. Morfin a long time, putting him in at least the same position as the officers involved in *Hardy*. Although Sergeant Gregory did not have any prior exposure to Mr. Morfin, unlike *George* there was no evidence that Mr. Morfin had changed his clothing in the brief interval between the shooting and the meeting with the police. That evidence, therefore, was more probative than it was in *George*.

Even more critically than those two distinctions, the question presented by ER 701 is whether the evidence was helpful to the trier of fact. Here the trial court, sitting as trier of fact, expressly noted the importance of the identification by officers who saw the defendant at the scene given the poor quality of the videotape. It was well within the discretion of the trial court under ER 701 to admit the evidence. Indeed, as this was a bench trial, there is very little chance the evidence invaded the province of the trier of fact. The court expressly noted that it was free to credit or reject the testimony of the two officers. Report of Proceedings (RP) at 165. Accordingly, the concerns of the *George* majority have less weight under these facts.

Defense counsel was not ineffective for failing to object. The evidence was admissible under ER 701 and *Hardy*. There is little likelihood an objection would have succeeded. Accordingly, Mr. Morfin's argument fails to satisfy the first prong of *Strickland*.

7

Mr. Morfin's second argument, however, does satisfy the initial *Strickland* standard. He argues, and we agree, that his counsel erred by not objecting to the detective's two statements that Mr. Ramirez Salazar confirmed that Mr. Morfin was the shooter.[3] This error, however, was harmless beyond a reasonable doubt.

The State agrees the statements constituted hearsay, but argues there was no objection due to defense tactics and the omission was also harmless. We are not convinced that the tactical argument is correct, but need not decide that point since the error was harmless.

The trial judge did not mention the Ramirez Salazar statements when issuing the bench verdict other than in the context of the detective's ruse, but did expressly discuss the identification testimony by the two officers. RP at 163-165. Although the statements were included in the written findings prepared by the prosecution, there is no indication that the trial court did consider the testimony as substantive evidence. Clerk's Papers at 32. Accordingly, we do not believe the evidence had any impact on the bench verdict.

---

[3] Normally the decision to not object to inadmissible evidence is tactical, but there is an exception to that general rule. "The decision of when or whether to object is a classic example of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

No. 33169-5-III
*State v. Morfin*

The critical evidence was the testimony of the two officers linking the clothing seen in the video to that worn by Mr. Morfin at the time of the incident.[4] The trial court only relied on that testimony in reaching the bench verdict. The statements attributed to Mr. Ramirez Salazar played no part in that determination. The error in not challenging them at trial did not prejudice Mr. Morfin.

In both instances, Mr. Morin has not met his burden of establishing that his trial counsel performed ineffectively. The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

---

[4] In this court's view, although the video was so grainy that the shooter's face could not be identified, the shooter's clothing was sufficiently discernable in the video to support the identification testimony based on the clothing alone.

9