# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56841-1-II |
| Respondent, | |
| v. | |
| JUSTICE TARIQ GREEN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Justice T. Green appeals his two convictions for first degree robbery while armed with a firearm and one conviction for second degree unlawful possession of a firearm. Green argues that the evidence was insufficient to sustain his convictions and the trial court erred by allowing a law enforcement officer to testify regarding his identification of Green in a surveillance photo.

We hold that the evidence, when viewed in a light most favorable to the State, was sufficient to sustain Green's convictions, but the trial court erred by allowing a law enforcement officer to testify regarding his identification of Green in a surveillance photo, and the error was not harmless. Accordingly, we reverse Green's convictions and remand for further proceedings.

FACTS

A.    ROBBERY INVESTIGATION AND CHARGES

In the early morning of November 1, 2020, two men robbed a restaurant in Tacoma. Both men wore clothes that covered most of their bodies, and hoods and masks that covered most of their faces. One man displayed a firearm. The men took personal property from an employee and

over $500.00 in cash from the restaurant. The men left the scene in a blue Honda Fit. Tacoma Police Detective Young Song investigated the robbery.

Three days later, law enforcement responded to an unrelated 911 call at a gas station in Tacoma. Law enforcement officers arrived at the gas station and found Green in the driver's seat of a blue Honda Fit with a woman in the front passenger seat and a man in the backseat. The officers also found a firearm in the car under the foot of the man in the backseat. The officers arrested Green on an outstanding arrest warrant from another state.

One week after the gas station arrest, Detective Song issued a bulletin to other officers that included surveillance photos of the men from the restaurant robbery and the vehicle the men had used. The photo of the man with the gun was low to moderate quality and showed the man's hands, eyebrows, eyes, and some skin around the eyebrows and eyes. The rest of the man's body was covered by items of clothing.





# ARMED ROBBERY

Tacoma Police detectives need your help to identify the suspects responsible for an armed robbery of a restaurant.

At 1:24 a.m. on Sunday November 1, 2020, the pictured suspects robbed the Domino's Pizza located in the 2600 block of N. Stevens St. in the City of Tacoma.

The suspects entered the business and one of the suspects displayed a handgun and pointed it at the employees. The second suspect stole an employee's wallet and cash from the business.

The suspects took the money and fled in a dark colored SUV or mini-van with chrome or alloy wheels.

Receive up to **$1000** dollars for information leading to the arrest and charges filed for the person in this case.

## Call 1-800-222-TIPS

*All Callers will remain anonymous*

000293



150

Clerk's Papers at 150.

Officer Brian Patenaude, one of the Tacoma Police officers who responded to the gas station call, contacted Detective Song and informed him about Green's arrest. Officer Patenaude told Detective Song that he remembered Green having distinct eyes and he was 99 percent sure that the man with a gun in the surveillance photo was Green.

The State charged Green by second amended information with two counts of first degree robbery while armed with a firearm, two counts of second degree assault while armed with a firearm, and one count of second degree unlawful possession of a firearm.

B. MOTION IN LIMINE

Prior to trial, Green filed a motion in limine requesting limits on law enforcement identification testimony. Specifically, Green argued that Officer Patenaude and Detective Song should not be permitted to testify that Green was the person in the surveillance footage. Green contended that such testimony was inadmissible opinion evidence and would invade the province of the jury.

At the hearing on his motion in limine, Green's attorney clarified that the motion pertained more to identification testimony from Officer Patenaude. Green's attorney argued that such testimony would be improper because it would highlight and bolster Officer Patenaude's out-of-court identification and would allow Officer Patenaude to substitute his view for the jury. Green's attorney argued that Officer Patenaude and Detective Song only had contact with Green through this case and there was no indication that the officers had specialized knowledge of Green's appearance or that Green's appearance had changed before trial. The State argued that it was necessary for the jury to hear how Officer Patenaude identified Green so the jury could understand

the investigation and how Detective Song went from having no suspect to having Green as the suspect.

The trial court denied Green's motion. The trial court explained that it would be improper for Officer Patenaude to look at Green from the witness stand and identify him for the first time at trial because Officer Patenaude would then be in the same position as the jury. However, the trial court ruled that it was permissible for Officer Patenaude to testify that, based on his observations of Green, that he believed the man in Detective Song's bulletin was Green. The trial court also ruled that it was permissible for Officer Patenaude to explain why he made that connection. However, the trial court ruled that Officer Patenaude would not be permitted to assign any numerical value to his certainty that the person in the bulletin was Green.

C.    TRIAL TESTIMONY

At the jury trial, the State presented testimony from the two employees who worked at the restaurant on the night of the robbery, an employee of a business across the street from the restaurant, a firearms specialist, and several law enforcement officers who were involved in the robbery investigation or Green's arrest at the gas station.

The restaurant employees, Cindi Berry and Malcom Graham, testified that two men entered the Tacoma restaurant after midnight. One of the men had a gun and wore a black hooded sweatshirt, black mask, dark hat, and dark tennis shoes with a silver brand emblem at the top and bottom of the laces. The other man did not have a gun but wore a gray hooded sweatshirt, backpack, and black latex gloves.

The man with a gun pointed the gun at Berry, told her it was a stickup, and told her to open the safe. The man used his right hand to hold the gun. Berry screamed for Graham to come to the

front of the restaurant. The man with the gun then told Graham to open the safe, but Graham could not access to the safe. The man with the gun made Graham give him his wallet. While this was happening, the man without a gun took $503.00 from Berry.

Berry described the man with the gun as Black, twenty to thirty years old, and "fit but not super buff." 3 Verbatim Rep. of Proc. (VRP) at 44-45. Graham described the man as Black and likely in his twenties. Berry guessed that the man with the gun was five feet and seven inches tall, and Graham guessed he was around five feet and ten or eleven inches tall. Berry described the gun as a black handheld gun with a red marking at the end of the barrel on the right side. Graham similarly described the gun as a small black handgun with color on the tip. Neither Berry nor Graham identified Green at trial.

Law enforcement witnesses, including Officer Patenaude, testified that they responded to a gas station in Tacoma three days after the robbery. When they arrived at the gas station, they came into contact with Green, who was sitting in the driver's seat of a blue Honda Fit. Officers also found a woman sitting in the front passenger seat and a man in the backseat.

The officers found a firearm in the car under the foot of the man in the backseat. The firearm was a black semiautomatic handgun with red accents. A firearms specialist testified that the firearm had red writing and red paint on the barrel. The firearms specialist testified that they had not seen this type of firearm with this color scheme before, and most firearms do not have paint on the barrel.

When Green was arrested, the jail collected the clothing that Green was wearing. A law enforcement officer went to the jail to retrieve Green's clothing, and the jail provided the officer

with a gray hooded sweatshirt, red t-shirt, red bandana, blue jeans, and black tennis shoes with a silver emblem on the front of the laces.

After Green was arrested at the gas station, Detective Song sent a bulletin to other law enforcement officers, seeking to identify the men from the restaurant robbery. The bulletin included photographs of the men and the vehicle the men used in the robbery.

Officer Patenaude testified that the bulletin stood out to him because the robbery and gas station incident were close in time, and, from his training and experience, Officer Patenaude believed the man with a gun resembled Green. Officer Patenaude testified that the photo only showed the man's eyebrows, eyes, and the top of his nose.

The State asked Officer Patenaude what about the photo led him to believe it was Green, and Green's attorney objected. Green's attorney argued that the State was exceeding the scope of what the trial court had previously ruled to be admissible. Green's attorney conceded that Officer Patenaude should be allowed to explain that he contacted Detective Song but objected to Officer Patenaude explaining in detail why he identified Green in the bulletin. The State responded that it had instructed Officer Patenaude to not assign any number or percentage to his belief that the man in the photo was Green, but the State wanted to get ahead of any argument regarding how little of the man is visible in the surveillance photo.

The trial court reiterated that Officer Patenaude could not place any numerical value on his belief that the man in the photo was Green. The trial court noted that Officer Patenaude did observe Green when Green was arrested at the gas station. The trial court ruled that it was appropriate for Officer Patenaude to testify "this is who I thought it was and this is why." 4 VRP at 82. The trial

7

court noted that the jury would take Officer Patenaude's testimony along with the other witnesses' testimony and would make the ultimate determination of whether or not he was correct.

Following the trial court's ruling, the State continued its line of questioning and asked Officer Patenaude what led him to believe the man in the photo was Green. Officer Patenaude testified that he believed the man in the photo was Green because of "[d]istinct separation of the eyes" and "darkness under the eyes I believe to be the tattoos that I saw on his face." 4 VRP at 87. The State asked if anything else led Officer Patenaude to believe that the man in the photo was Green, and Officer Patenaude responded, "There was also an image of the Honda Fit leaving the scene, so just based on the totality of it, what I can see of the eyes, the eye separation, brow, bridge of nose, car." 4 VRP at 88. On redirect examination, the State displayed the bulletin and asked, "Which of these two individuals is the one that you believe to be Mr. Green?" 4 VRP at 93. Officer Patenaude responded, "The top image," which was the image of the man with a gun. 4 VRP at 93.

The trial court admitted a surveillance video of the robbery filmed from inside the restaurant, and this video was played for the jury. A witness that worked across the street from the restaurant testified that she provided surveillance footage from the night of the robbery to the police. The surveillance footage from across the street was also admitted into evidence.[1] The trial court admitted a redacted booking photo of Green's face that showed Green being Black with tattoos above his eyebrows and on his cheeks. Law enforcement officers testified that Green was five feet and nine or ten inches, approximately 150 to 170 pounds, and appeared to be in his young

---

[1] Although this court's record contains several still photographs from the restaurant's surveillance footage, the record does not contain either video.

twenties. Additionally, Detective Song testified that he observed Green sign a form and saw Green taking notes at trial, and Green appeared to be right-handed.

After the State rested its case, Green brought a motion to dismiss the case for insufficient evidence regarding identity. The trial court denied the motion to dismiss. The trial court ruled that the State had presented sufficient evidence regarding identity because Green was found in a blue Honda Fit similar to the one used in the robbery, the firearm found in the car with Green matched the description of the firearm used in the robbery, and Officer Patenaude had testified regarding Green's identity based on his own observations of Green.

Green presented evidence from two witnesses who testified that Green was at a house in Tacoma with them on the night of the robbery. Green did not testify.

D.     CLOSING ARGUMENTS, VERDICT, AND SENTENCING

In closing arguments, both Green and the State addressed the identity of the man in the surveillance footage as being one of the primary questions at issue. The jury found Green guilty of all charges and found that Green was armed with a firearm while committing each crime.

At sentencing, the trial court ruled that the second degree assault convictions merged with the first degree robbery convictions and dismissed the second degree assault convictions. The trial court imposed a sentence of 140 months of total confinement.

Green appeals.

ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE

Green argues that the evidence was insufficient to sustain his two convictions for first degree robbery while armed with a firearm and one conviction for second degree unlawful

9

possession of a firearm. Green only challenges the sufficiency of the evidence as it relates to the element of identity. Green's challenge fails.

We review challenges to the sufficiency of the evidence by considering the evidence in the light most favorable to the State and determining whether any rational factfinder could have found the elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). A defendant making an insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Circumstantial and direct evidence are considered equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). This court defers to the factfinder on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

Here, the restaurant employees described the man with the gun, including his approximate height, build, age, and race, and the State presented evidence that Green generally matched the employees' descriptions. The State also presented evidence that both the man with the gun and Green appeared to be right-handed. The men left the robbery in a blue Honda Fit, and Green was found in a blue Honda Fit in the same city three days later. Further, law enforcement found a handgun in the blue Honda Fit that had a unique color scheme and matched the description of the handgun used in the robbery. The man in the robbery incident wore dark tennis shoes with a silver emblem on the laces, and the State presented evidence that the jail recovered from Green black tennis shoes with a silver emblem on the laces when he was arrested.

Importantly, the jury also watched the restaurant surveillance video of the robbery and had the opportunity to observe Green for several days during the trial. Thus, viewing the evidence and all reasonable inferences from the evidence in a light most favorable to the State, a rational jury could find beyond a reasonable doubt that Green was the man with the gun in the surveillance footage based on the circumstantial evidence connecting Green to the robbery, combined with the jury's own observations and comparisons of Green in the surveillance footage.[2] Therefore, Green's challenge to the sufficiency of the evidence fails.

B.      IDENTIFICATION TESTIMONY

Green argues that the trial court erred by allowing Officer Patenaude to testify regarding his identification of Green in the law enforcement bulletin. Specifically, Green argues that the testimony was improper opinion testimony that invaded the province of the jury. We agree.

1.      Admission of Identification Testimony

We review a trial court's admission of evidence for an abuse of discretion. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). A trial court abuses its discretion if its ruling is manifestly unreasonable, based on untenable grounds or reasons, or contrary to law. *Id.* at 196-97.

---

[2] This opinion's analysis of the sufficiency of the evidence does not include Officer Patenaude's identification testimony. As discussed below, the trial court erred by admitting Officer Patenaude's identification testimony, and the error was not harmless. However, even without the improper identification testimony, the evidence when viewed in a light most favorable to the State, is sufficient to support a finding of guilt. *See State v. George*, 150 Wn. App. 110, 120, 206 P.3d 697 (circumstantial evidence of identity was not sufficient to hold that admission of improper identification testimony was harmless but was sufficient to support conviction without erroneous testimony if a jury so found on remand), *review denied*, 166 Wn.2d 1037 (2009).

A lay witness may opine on the identity of a person in a surveillance photograph if there is some basis to conclude that the witness is more likely than the jury to correctly identify the defendant from the surveillance photograph. *State v. Hardy*, 76 Wn. App. 188, 190, 884 P.2d 8 (1994), *aff'd sub nom. State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996). For example, "opinion testimony may be appropriate when the witness has had sufficient contacts with the person or when the person's appearance before the jury differs from his or her appearance in the photograph." *State v. George*, 150 Wn. App. 110, 118, 206 P.3d 697, *review denied*, 166 Wn.2d 1037 (2009).

In *Hardy*, Division One consolidated two cases and considered whether the trial court properly admitted law enforcement officers' opinion testimony regarding the defendants' identities. *Hardy*, 76 Wn. App. at 190. In both *Hardy* cases, videos were introduced at trial, and law enforcement officers identified the defendants in the videos. *Id.* at 191-92. The first officer knew the defendant for "several years," and the second officer knew the defendant "for 6 or 7 years and considered him a friend." *Id.* at 191, 192. Division One affirmed the trial courts' admission of the officers' identification testimony because the officers had sufficient contacts with the defendants such that the officers were in a better position than the jury to correctly identify the defendants. *Hardy*, 76 Wn. App. at 191-92; *see George*, 150 Wn. App. at 118 ("But opinion testimony may be appropriate when the witness has had sufficient contacts with the person.").

In *George*, this court considered whether the trial court properly admitted a law enforcement officer's opinion testimony regarding two defendants' identities. *George*, 150 Wn. App. at 117. The trial court had admitted a "poor quality" surveillance video at trial that did not clearly show the man's facial features. *Id.* at 119 n.5. The testifying officer had observed one defendant as he left a van and ran away, then at a hospital later that evening. *Id.* at 119. The

officer had observed the other defendant while the defendant was getting out of a van and being arrested, then later when the defendant was interviewed at the police station. *Id.* The officer identified the defendants in the video based on the men's builds, the way they carried themselves and moved, what they were wearing, how the men compared to each other, and from speaking with them on the day of the crime. *Id.* *George* held that the officer's contacts with the defendants fell "far short of the extensive contacts in *Hardy*," and the officer did not know enough about the defendants to express an opinion that they were the men in the surveillance video. *Id.* Thus, the trial court erred by admitting the officer's identification testimony. *Id.*

Here, Officer Patenaude only observed Green on one occasion—during the gas station incident and arrest. One week after Officer Patenaude had the opportunity to observe Green, Officer Patenaude viewed a low to moderate quality surveillance photo that showed the man's hands, eyebrows, eyes, and the top of his nose. Officer Patenaude believed this man to be Green based on his single interaction with Green one week prior. Officer Patenaude's brief contact with Green was, at best, on par with the contacts held to be insufficient in *George*. And there is also no indication in the record that Green had altered his appearance before trial such that Officer Patenaude would be more likely to correctly identify him than the jury. Thus, under the facts of this case, there is no evidence that Officer Patenaude was more likely than the jury to correctly identify Green in the surveillance photo.[3] Therefore, we hold that the trial court erred by allowing Officer Patenaude to testify regarding his identification of Green in the law enforcement bulletin.

---

[3] We note that the jury had more opportunity to observe Green on a daily basis at trial than Officer Patenaude had during the gas station interaction. Additionally, the jury viewed Green's redacted booking photo, the restaurant's surveillance video of the robbery, and numerous still photographs from the video.

2.      Harmless Error

To determine if the improperly admitted evidence prejudiced Green or was harmless error, we look at whether there is "overall, overwhelming evidence as a whole" such that the error is minor. *Id.*

Here, the identity of the man in the surveillance footage was a significant issue in determining Green's guilt. Although the State presented evidence of physical similarities between Green and the armed man in the robbery, this evidence was not so overwhelming; indeed, the restaurant employees could not identify Green based on the physical similarities between Green and the armed man in the robbery. The circumstantial evidence connecting Green to the robbery—a blue Honda Fit, black tennis shoes with silver emblems, and a unique colored gun in the backseat under the foot of an individual who was not Green—were only found three days after the crime occurred. And while these items were similar to the ones used in the robbery, there is no evidence that they were the same items used during the robbery. Further, although the jury viewed a surveillance video and photos, the men in the video and photos were mostly covered up, and the footage was not clear enough to lead necessarily to a finding of guilt without the improper identification testimony. Thus, we are not convinced that the overall evidence in this case was so overwhelming that the improper admission of Officer Patenaude's improper identification testimony was minor. Therefore, like in *George*, we hold that the State's untainted evidence is not so overwhelming that the improperly admitted identification testimony was harmless.

CONCLUSION

As to Green's sufficiency of the evidence challenge, even if we view the evidence without consideration to the challenged identification testimony, the evidence was sufficient to sustain

No. 56841-1-II

Green's convictions.  However, reversal is required because the trial court erred by allowing a law enforcement officer to testify regarding his identification of Green in a surveillance photo, and the error was not harmless.  While the untainted evidence viewed in a light most favorable to the State was sufficient to sustain a conviction, the untainted evidence was not so overwhelming as to overcome the prejudice of improperly admitted identification testimony.  Accordingly, we reverse Green's convictions and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, C.J.

Veljacic, J.

15